E-FILED
Wednesday, 03 June, 2015  08:46:32 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE CENTRAL DISTRICT OF ILLINOIS**

**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|   *ex rel*. BUD CONYERS, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|               v. | ) | Case No. 4:12-cv-04095 (SLD-JEH) |
| KELLOGG BROWN & ROOT, INC., | ) | |
|   *et al*., | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

**JOINT DISCOVERY PLAN**

Following discussions by and through their counsel, and as directed by the Court in its Order of April 28, 2015, the United States of America (the "Government") and Defendants Kellogg Brown & Root Services, Inc. ("KBRSI"), Kellogg Brown & Root LLC, and Overseas Administrative Services, Ltd. ("OAS") (collectively "Defendants" or "KBR") respectfully submit this Joint Discovery Plan pursuant to Federal Rule of Civil Procedure 26(f)(3) for the purpose of formulating a proposed discovery calendar for consideration by the Court.

The parties first jointly describe circumstances affecting the pace at which they will be able to conduct electronic discovery in this case. The parties then describe their separate views regarding the conduct of discovery. The government respectfully recommends that the Court enter a six-month administrative stay of the case given the uncertainty about when KBR will be in a position to comply with its discovery obligations herein. KBR contends that discovery should begin at this time.

1

**I.     Parties' Joint Statement Regarding Data Security Requirements with which KBR and the Government Is Required to Comply That Will Slow the Pace of e-Discovery**

The parties jointly inform the Court that KBR is required to comply with data security requirements related to protecting classified data that will slow e-discovery.

The allegations in this case relate to KBR's work in support of the U.S. Army under the Logistics Civil Augmentation Program ("LOGCAP") III contract in the Middle East war theater of operations.  In March 2013, KBR learned, in connection with an Armed Services Board of Contract Appeals proceeding ("ASBCA proceeding") involving the KBR and the Army, that KBR's non-classified electronic data system may have contained classified information.  KBR believes that most of the potentially classified information sent to LOGCAP III personnel was sent from United States Government unclassified system(s), unbeknownst to KBR, and without any written request, caution, or warning.  Neither the LOGCAP III contract nor KBR's Department of Defense-approved security clearance provided for the transmission and receipt of such data.

As a result of transmittal of e-discovery documents in conjunction with the then pending ASBCA proceeding, in March 2013 both the Army and KBR learned of the potential existence of compromised data, and KBR promptly notified the appropriate agencies.  Working with the Defense Security Service ("DSS"), which has responsibility for monitoring Federal Government contractors for compliance with legal requirements relating to protecting classified information, KBR submits that it promptly and properly secured electronic data sources with potentially classified items, and began appropriate remediation efforts on or about March 12, 2013.

On January 7, 2015, DSS initiated a series of orders that resulted in a complete shutdown of KBR's electronic discovery systems containing LOGCAP III related documents and prohibited KBR from accessing that data and the source media.  KBR notified the undersigned

counsel for the Government of the DSS shutdown on February 20, 2015. These data systems remain shut down as of the date of this filing. Until the issues are resolved, KBR can neither conduct electronic searches of LOGCAP III source media nor provide its electronic data to any party litigant in pending litigation.

KBR is actively working with DSS and others to resolve these issues and secure permission from the US Government to regain access to and control of the secured hardware where LOGCAP III data is stored. At this time, it is impossible to provide a reliable estimate on when the issues will be resolved; however KBR currently estimates that it will be able to begin conducting electronic discovery in LOGCAP III cases in approximately four to five months, i.e., October or November 2015. Because of KBR's other litigation priorities, KBR does not expect to be in a position to begin electronic discovery in this case until late 2015.[1]

Additionally, in light of the above-mentioned inadvertent disclosure of potentially classified materials in another litigation, the government determined that it would be prudent to take affirmative steps to prevent inadvertent disclosure of classified materials in this lawsuit. To that end, the United States developed a protocol to screen for potentially classified materials in documents collected from government custodians for potential production to KBR in this litigation. Although not to the degree of delay contemplated in KBR's e-discovery, this screening process will add a measure of delay to the government's e-discovery production.

The parties note that they met in person with representatives of the DSS on May 19, 2015 and had a productive discussion regarding the e-discovery challenges presented by the potential data spill, KBR's prior document productions, and ways to efficiently streamline

---

[1] These same issues also have impeded both parties' ability to conduct electronic discovery in *United States v. Kellogg Brown & Root Servs., Inc.*, No. 4:12-cv-04110 (C.D. Ill.). The parties will be filing a joint motion with respect to discovery in that case.

discovery in this case.  The parties will continue to meet and confer on this and other discovery issues.

## II.    Government Request for Administrative Stay

Due to the uncertainty regarding when KBR will be in a position to fulfill its discovery obligations in this case, the government suggests that the Court enter an administrative stay for six months.   The government also suggests that the Court require the parties to report to the Court in five months regarding the progress that has been made in resolving the issues resulting from the classified data spill.

As noted above, due to the requirements for remediating the data spill, at this time, it is impossible to provide a reliable estimate on when the issues will be resolved.  Although KBR currently estimates that it will be able to begin conducting electronic discovery in LOGCAP III cases in approximately four to five months, i.e., October or November 2015, because of KBR's other litigation priorities, KBR does not expect to be in a position to begin electronic discovery in this case until late 2015.  KBR has acknowledged in discussions with the government that there is no certainty that these time frames will be met.  Indeed, KBR advises the Court in its separate statement below that "It is, however, difficult to predict with certainty how long the potential data spill issues will take to resolve."

KBR contends that discovery should commence now.  In practical terms, that would mean that discovery would be almost entirely a one-way street with the government under an obligation to provide information to KBR at the same time that KBR is unable to engage in reciprocal compliance with its own discovery obligations toward the government with respect to the vast bulk of its discoverable information.

KBR contends below that it has produced voluminous information already to the government in several related criminal cases and in response to an administrative subpoena issued in connection with Mr. Conyers' filing of this *qui tam* case. The criminal cases focused on the actions of Jeff Mazon and Anthony Martin, and one subcontract action on the part of Stephen Seamans. At KBR's request, the government recently sent KBR a listing of approximately 48 individuals as to whose electronic and hard document files the government would seek discovery in this action. Mazon, Martin, and Seamans were included, but KBR states that it will be **unable to begin producing** documents from any of the other 45 individuals on the list until "late in 2015." In addition, there are a number of subcontracts cited in the government's complaint that were not covered by the administrative subpoena the government earlier served on KBR. In short, the information produced to date by KBR is quite limited compared to the information the government reasonably will seek in the discovery phase of this case. Moreover, even armed with the limited information KBR previously produced, the government will not be in a position to conduct depositions until it can be sure that it has secured all relevant documents, most of which KBR will not even begin producing until late in 2015. KBR mentions below the Supreme Court's recent decision in *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, No. 12-1497 (U.S. May 26, 2015), and asserts that it will "significantly reduce the scope of discovery" in this case. First, the government disagrees that the decision will substantially reduce discovery. KBR may argue that certain of the claims for payment submitted by KBR to the government are now beyond the statute of limitations given the Supreme Court's decision that the Wartime Suspension of Limitations Act does not apply to the government's civil claims. Our review of the subcontracts identified in the complaint suggests that in the case of every such subcontract, certain of the claims for payment submitted

thereunder remain within the statute of limitations notwithstanding *Carter*.   Accordingly, the *Carter* decision will not result in the narrowing of the universe of subcontracts that are subject to discovery, or limit the facts the government will rely on to prove the false and fraudulent nature of those subcontracts.[2]

Second, even if *Carter* narrows somewhat the scope of discovery, that is not a reason the government should be required to proceed with fulfilling its discovery obligations at a time when KBR is unable to reciprocate with respect to the majority of its discoverable information.  KBR states that beginning discovery immediately would not result in a lop-sided burden on the government only because "there is no impediment to KBR's ability to produce its subcontract files – which can be voluminous – and KBR will do so promptly upon receipt of an appropriate document request."   The government believes that the volume of documents that KBR can produce prior to resolution of the data spill issue pales by comparison to the volume of electronic documents that are currently "sequestered" until the spill is cured.  The volume of documents produced by KBR on the various subcontracts in response to the administrative subpoena was in the hundreds, or thousands, of pages per subcontract.  KBR has advised that the volume of electronic data that is unavailable for searching averages approximately 100 gigabytes per individual.  KBR says that it has produced some information for 17 of the individuals out of 48 on the government's list, which means that there remain 31 individuals for whom information is frozen until resolution of the data spill problem.  It is estimated that, with regard to Microsoft Word documents, one gigabyte of electronic data equates to approximately 64.782 hard copy

---

[2] Not surprisingly, the parties differ in their views of which of the alleged false claims are now beyond the FCA statute of limitations.  KBR sets forth its position below. The government believes that, under the alternative statute of limitations—three years after the date when facts material to the right of action were known or reasonably could have been known by the official charged with responsibility to act—all claims for payment submitted on or after January 8, 2014 are within the limitations period.  This issue is not before the Court at this time.

pages.[3] 31 persons times 100 gigabytes times 64,782 pages amounts to 200,824,200 pages. This is the volume of material that will remain off-limits for searching by KBR until late in 2015. The government appreciates KBR's offer to begin producing documents from its remaining document sources, but such production would be the tip of the iceberg in the government's opinion.

The government submits that, notwithstanding KBR's offer to search non-sequestered document sources in the event the Court decides that discovery should commence immediately, KBR's recommendation would still be tantamount to a one-sided stay: KBR would receive an effective stay of the vast bulk of its discovery obligations while the discovery obligations of the government would not be stayed.

Finally, KBR requests that, if the Court orders discovery to commence now, the Court hold monthly telephone conferences with the parties "so that the parties can inform the Court of the progress of discovery and raise any issues that they have been unable to resolve." KBR further suggests that the parties advise the Court twenty four hours in advance if a particular monthly conference is unnecessary. The government believes this is unnecessary because the parties will work diligently to resolve disagreements, and will promptly advise the Court if they believe the Court's intervention is needed. The government respectfully requests that the latter approach better conserves judicial resources than KBR's suggested approach of regularly scheduled monthly Court conferences, any one of which or all of which might end up being cancelled as unnecessary.

---

[3] See "Data Volume Estimates and Conversions," http://www.sdsdiscovery.com/resources/data-conversions/. The estimate given there is the same as that given at http://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf.

In summary, the government therefore submits that the more reasonable and just course of action would be for the Court to enter a six-month stay that applies across the board to both sides, and to impose an obligation that the parties report back to the Court in five months on the progress in resolving the issues resulting from the classified data spill.

If the Court decides not to enter an administrative stay, the Government suggests the dates and other provisions relating to discovery set out in Section IV below.

## III.   KBR Requests that Discovery Begin Now

KBR contends that discovery should begin now and opposes the Government's request for a sixth month administrative stay.  The original complaint, which remains under seal, was filed eight and one half years ago on December 20, 2006.  The matter remained under seal until the government decided to partially intervene on January 6, 2014.

The Government's allegations for the most part relate to events that took place more than ten years ago.  *See, e.g.*, Compl. of the U.S. ¶¶ 35, 36, 38, 48, 53, 54, 56-58, 61, 64, 69-72, 76-83, 86-93, 99, 101, 103, 105-06, 107-09, 114-21, 123-25, 132, 135-36, 139, 141 (Jan. 6, 2014) [Dkt. 55] (alleging events from 2003 and early 2004).  Further delay will only exacerbate the difficulties that the parties already face in litigating a matter where the events at issue happened so long ago as memories inevitably continue to fade and evidence may become lost.

The passage of time notwithstanding, there are significant questions regarding the scope of discovery that the parties can efficiently begin to address once discovery begins.

First, the Government already has the benefit of over 1.5 million pages of documents that KBR produced between February 2004 and January 2012.  These productions included KBR's responses to subpoenas arising out of the investigations of Stephen Seamans, Tony Martin, and Jeff Mazon, who are treated as key actors in the Government's complaint and KBR's

responses to subpoenas related to refrigerated trucks that are also a focus of the Government's complaint. *See, e.g.*, Compl. of the U.S. ¶¶ 40, 86-97, 107-14, 129-37. Because of the volume of relevant material already produced to the Government in these related matters, discovery here should be more limited than it otherwise would be and KBR cannot predict how much additional material the Government will need. KBR should not be required to reproduce any materials previously produced to the Government.

Second, the Supreme Court's recent decision in *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, No. 12-1497 (U.S. May 26, 2015), holding that the Wartime Suspension of Limitations Act does not apply to the False Claims Act, means that many of the Government's claims may be subject to the False Claims Act's statute of limitations, 28 U.S.C. § 3731(b), and therefore subject to dismissal, which would significantly reduce the scope of discovery.[4]

To be clear, KBR is not suggesting that only the government be required to begin production of documents. KBR fully anticipates being able to produce documents responsive to the government's document requests that can be located from sources other than its electronic data files. For example, the government notes that there are subcontracts mentioned in the complaint that were not produced in response to prior subpoenas. That is correct, but there is no

---

[4] As the government notes above, *see supra* note 2, the parties disagree about effect the FCA statute of limitations will have upon the government's allegations. The FCA statute of limitations is the longer of six-years from the submission of the false claim or three years from the date of the government's discovery of an FCA violation (up to a maximum of ten years from submission of the false claim). 31 U.S.C. § 3731(b). KBR contends that, after accounting for tolling agreements between KBR and the Government, and calculating back in time from the filing date of the Complaint-in-Intervention of the United States, the six-year limitations period has run for any false claims submitted before around May 9 or May 10, 2004. KBR further contends that the alternative limitations period, three years from government discovery, has also long-since run because the Government has had knowledge of the basis of its allegations at least since KBR notified the Government of concerns relating to Seamans and Mazon in January 2004, and of Martin at least since its grand jury subpoena of KBR documents in April 2005.

impediment to KBR's ability to produce its subcontract files – which can be voluminous – and KBR will do so promptly upon receipt of an appropriate document request. There likely are other documents that KBR can collect and produce in response to appropriately tailored document requests, which is all the more reason for discovery to begin now. The government has proposed that KBR search for, process, and produce electronic documents for 48 different custodians. KBR believes that this list is overbroad and the parties agreed at the May 19, 2015 meeting to discuss the appropriateness of that list. In fact, among the 1.5 million pages of documents KBR previously produced are documents associated with least 14 of the proposed custodians in addition to Mazon, Martin, and Seamans. KBR also produced to the government actual hard drives for Martin and two other custodians on the government's proposed list. In total, KBR has produced documents associated with 17 of the 48 custodians on the government's proposed list.

There is no reason to delay the parties' discussions regarding these threshold issues concerning the scope of discovery, which will only be aided by the exchange of preliminary information such as Rule 26(a)(1) initial disclosures and production of responsive documents. Accordingly, KBR asks that discovery begin immediately and that the Court schedule a one year time period to conduct fact discovery. It is, however, difficult to predict with certainty how long the potential data spill issues will take to resolve. KBR will notify the Court should the deadlines proposed below become unworkable and the parties determine that additional time will be needed.

In addition, KBR requests that the Court schedule a telephonic status conference on July 24, 2015 and on a monthly basis thereafter so that the parties can inform the Court of the progress of discovery and raise any issues that they have been unable to resolve. At least twenty-

four hours prior to each scheduled conference, KBR proposes that the parties will file a status report with the Court if they agree that no status conference is necessary.  KBR also requests that, if the parties are unable to resolve any disputes about the effect of the application of the FCA statute of limitations after the Supreme Court's holding in Carter, that the Court hear argument on these issues at the status conference in October 2015.  The parties and the Court can discuss during the status conferences prior to October 2015 whether briefing would be appropriate and if so, a schedule for such briefing.   KBR disagrees with the government that, absent a regular status conference with the Court, the government will meaningfully engage on discovery issues based on KBR's experience with the government in this litigation and in *United States v. Kellogg Brown & Root Servs., Inc.*, No. 4:12-cv-04110 (C.D. Ill.).  If, however, the government does meaningfully engage with KBR on discovery, the parties will notify the Court that no status conference is needed, resulting in no burden upon the Court.

## IV.     Proposed Discovery Timeline and Other Provisions Recommended by the Parties

The following are dates and other provisions relating to discovery proposed by the parties' counsel.  The Government proposes the dates set out below only as an alternative to an administrative stay.

1.     The parties agree that they will exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) by July 8, 2015.

2.     KBR proposes that the deadline for joining additional parties is December 15, 2015.  The government proposes that the deadline for joining additional parties is September 15, 2016.

11

3. KBR proposes that deadline for amendment of pleadings is January 15, 2016. The government proposes that deadline for amendment of pleadings is October 15, 2016.

4. KBR proposes that deadline for close of fact discovery is June 13, 2016. The government proposes that the deadline for close of fact discovery is December 31, 2016.

5. KBR proposes that the government shall disclose experts and provide expert reports by April 13, 2016. The government proposes that the government shall disclose experts and provide expert reports by October 31, 2016.

6. KBR proposes that Defendants shall disclose experts and provide expert reports by May 13, 2016. The government proposes that Defendants shall disclose experts and provide expert reports by November 30, 2016.

7. Discovery shall be modified as follows:

   a. KBR proposes that parties be allotted 10 depositions each as provided under Fed. R. Civ. P. 30 and 31. The government proposes that the parties be allotted 20 depositions each. The scope of discovery is uncertain. The parties will meet and confer about the scope of discover and will jointly seek leave to take additional depositions should they determine that they are necessary.

   b. The parties agree that a protective order, including a "claw back" provision, is required to protect privileged and confidential information.

8. KBR proposes that all discovery, including deposition of experts, is to be completed by July 13, 2016. The government proposes that all discovery, including deposition of experts, is to be completed by February 28, 2017.

9. KBR proposes that the deadline for filing case dispositive motions is August 8, 2016. The government proposes that the deadline for filing case dispositive motions is June 30, 2017.

10. KBR proposes that the deadline to file Expert Objections (*Daubert* and similar motions) is August 8, 2016. The government proposes that the deadline to file Expert Objections (*Daubert* and similar motions) is June 30, 2017.

11. The parties agree to incorporate the Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications") attached as Exhibit A, which will apply mutually to the productions of ESI by both the United States and KBR, with the following modifications:

a. The parties will include "From," "To," "CC," "BCC" metadata/database fields reflecting the names of authors and recipients in the manner displayed in the email (*see* Specification No. 3).

b. The parties will include a "TimeSent" metadata/database field reflecting the time the email was sent in the time zone of the producing party's choice. The parties may produce e-mails with the time included in the original e-mail, and are not required to synchronize all TimeSent fields to use one time zone. The producing party will notify the requesting party of the applicable time zone for the documents (*see* Specification No. 3).

c. The parties will not provide metadata/database fields for "Paragraph" (*see* Specification No. 3).

d. The parties will not provide metadata/database fields for "Message Header" (*see* Specification No. 3).

e. The parties will not provide metadata/database fields for "Comments" (*see* Specification No. 3).

f. Defendants propose that the parties will produce PowerPoint files in TIFF format, capturing any speaker's notes (*see* Specification No. 5). The Government does not object to this modification, so long as the production of PowerPoint files is in color with all comments displayed.

g. The parties are not required to provide file path information for each duplicate of de-duplicated documents (*see* Specification No. 6).

h. The parties are not required to provide custodian information for each duplicate document for documents de-duplicated within a custodian's data (*see* Specification No. 6).

i. The parties are not required to discuss with one another in advance the production of the data described in Specification No. 7.

j. Unless otherwise specified, the parties are not required to produce documents to reflect hidden text (*see* Specification No. 7(a)).

k. Unless otherwise specified, the parties will make reasonable efforts to extract embedded files (*see* Specification No. 7(b)).

l. Unless otherwise specified, the parties will make reasonable efforts to unlock encrypted files prior to production (*see* Specification 7(d)).

## V.    Additional KBR Proposals

KBR also proposes the following additional dates and other provisions relating to discovery:

14

1.     KBR proposes that the Court hold a telephone status conference on discovery on July 24, 2015 and on a monthly basis thereafter at the convenience of the Court. KBR further proposes that the parties will inform the Court at least 24 hours prior to the status conference if they agree that no status conference is necessary.

2.     KBR proposes that the status conference in October 2015 address any unresolved issues regarding the effect of the False Claims Act statute of limitations on the Government's claims.

3.     KBR proposes that KBR will not be required to reproduce documents produced to the government in response to prior government document requests related to this case.

Respectfully submitted,

Benjamin C. Mizer
Principal Deputy Assistant
   Attorney General

James A. Lewis
United States Attorney
Central District of Illinois

*s*/ John A. Kolar
Michael D. Granston
Judith Rabinowitz
John A. Kolar
Russell B. Kinner
Patrick M. Klein
Bradley Brinkman
Glenn P. Harris
Attorneys, Civil Division
COMMERCIAL LITIGATION BRANCH
UNITED STATES DEPARTMENT
       OF JUSTICE
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 307.1089

s/ Craig D. Margolis
Craig D. Margolis
cmargolis@velaw.com
Tirzah S. Lollar
tlollar@velaw.com
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701
(202) 639-6500
(202) 639-6604 (facsimile)

*Attorneys for Defendants Kellogg Brown & Root, Inc., Kellogg Brown & Root Services, Inc., Kellogg Brown & Root, LLC, and Overseas Administration Services, Ltd.*

OF COUNSEL:

Christine N. Roushdy
Ralph C. Mayrell
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701

15

(202) 514.7361 (facsimile)                    (202) 639-6500
                                              (202) 639-6604 (facsimile)

John E. Childress
U.S. Attorney's Office
318 S. Sixth
Springfield, IL 62701
john.childress@usdoj.gov
*Attorneys for the United States of America*


Dated: [  ], 2015

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been served upon the following attorneys of record in this case on this the [ ] day of [ ], 2015, via the Court's electronic filing system:

Craig D. Margolis
cmargolis@velaw.com
Tirzah S. Lollar
tlollar@velaw.com
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701
(202) 639-6500
(202) 639-6604 (facsimile)

*Attorneys for Defendants Kellogg Brown & Root, Inc., Kellogg Brown & Root Services, Inc., Kellogg Brown & Root, LLC, and Overseas Administration Services, Ltd.*

Victor Aronoff Kubli
The Law Office of Victor A. Kubli PC 13948
Bromfield Road Germantown, MD 20874
kubli@kublilaw.com

*Attorney for Plaintiff-Relator Bud Conyers*

s/ John A. Kolar
John A. Kolar