Case 4:06-cv-04024   Document 474   Filed on 02/09/23 in TXSD   Page 1 of 5

United States District Court
Southern District of Texas
**ENTERED**
February 09, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:06-CV-04024 |
| KELLOGG BROWN & ROOT INC, *et al.*, | § § § § | |
| Defendants. | | |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Before the Court is the relator's, Estate of Bud Conyers ("Mr. Conyers") corrected motion (DE 462) to set his share of a settlement between himself, the government, and Kellogg Brown & Root, Inc. ("KBR"). The government has filed a response (DE 464), Mr. Conyers has filed a reply (DE 466), and both parties appeared before the Court for a hearing on this motion (DE 471). After reviewing the motion, the response, the reply, the record, the applicable law, and the hearing transcript, the Court determines that the relator's motion should be **GRANTED IN PART** and **DENIED IN PART.**

## II. BACKGROUND

The relator, Bud Conyers, filed his *qui tam* action against KBR in 2006. In 2014, the government intervened under the False Claims Act, 31 U.S.C. § 3731. The parties settled in 2022, with KBR agreeing to pay the United States $13,677,621. As

for Mr. Conyers, the settlement agreement released KBR "from any liability to the Relator arising from the filing of the Civil Action," and Mr. Conyers voluntarily dismissed his *qui tam* action with prejudice (DE 449). Nonetheless, Mr. Conyers retained his rights under the False Claims Act to a share of the settlement proceeds. This Court retained jurisdiction to resolve disputes over his share.

### III. ANALYSIS

#### A. The False Claims Act and Factual Overlap

This dispute centers on the interpretation of 31 U.S.C. § 3730(d)(1), a subsection of the False Claims Act. The relevant portion states: "If the Government proceeds with an action brought by a person under subsection (b), such person shall . . . receive at least 15 percent but not more than 25 percent *of the proceeds of the action or settlement of the claim.*" *Id.* (emphasis added). The question, therefore, is whether Mr. Conyers may recover a portion of the settlement where the covered conduct does not explicitly include the conduct that Mr. Conyers alleged.

The Court's analysis is guided by *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368 (8th Cir. 2015). In that case, the government objected to a relator's recovery because the relator did not plead the conduct that formed the basis of the claims that the government settled. The court reasoned that "a relator seeking recovery must establish that there exists [an] overlap between Relator's allegations and the conduct discussed in the settlement agreement." *Id.* at 373 (quoting *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 651 (6th Cir.2003)). The court clarified that the overlap must be "factual." *Rille*, 803 F.3d 368 at 374. As the

Eighth Circuit explained, it would be "inconsistent with the purposes of the [False Claims] Act to permit a relator automatically to receive a share of the proceeds when the relator might have had nothing to do with the government's recovery on a particular claim." *Id.* at 373.

### B. Mr. Conyers' Allegations and the Settlement's Covered Conduct

The next question is whether the settlement's covered conduct overlaps with Mr. Conyers' three *qui tam* allegations. The first alleges that KBR used mortuary trailers to deliver consumable supplies to United States soldiers. The second alleges that KBR managers billed prostitutes to the United States. The third alleges that two KBR employees accepted kickbacks from truck suppliers; specifically, that Willie Dawson accepted kickbacks for trucks, trailers, and equipment in exchange for accepting defective vehicles, and that Rob Nuble accepted kickbacks in exchange for charging the United States for more trucks than the supplier delivered.

The settlement's covered conduct includes three employees' conduct—Stephen Seamans, Jeff Mazon, and Anthony Martin. Mr. Seamans inflated bids for a cleaning contract in exchange for kickbacks, and Mr. Mazon did the same with a fuel contract. Mr. Martin received kickbacks that inflated the price of truck and trailer contracts that were formed after Mr. Conyers began working for KBR.

The Court finds there is sufficient factual overlap between Mr. Conyers' allegations of kickbacks for trucks and trailers and the government's allegations of kickbacks for trucks and trailers. The details concerning the guilty parties or the specific vehicles *and* their use are inconsequential because equity aids the statute in

ensuring that a relator does not lose the favor of the statute based on the government's determination of how and on what basis it will proceed, either to trial or in settling the case. The facts establish that in December of 2003, Mr. Conyers reported the fraud he alleged to both the United States Army and KBR's Office of Internal Affairs. Alerting the government to fraud in the form of kickbacks for truck contracts put the government on notice of the practice and arguably impelled and/or focused its investigation into Mr. Martin's conduct. On the other hand, the Court does not find sufficient factual overlap between the covered conduct and Mr. Conyers' two other claims.

The next question is apportionment. The settlement agreement does not indicate the weight of each claim. Accordingly, the Court weighs each of the settled claims equally, entitling Mr. Conyers to a percentage of one third of the total settlement amount of $13,677,621—$4,559,207. The Court determines that the appropriate percentage is 25%. The Act instructs that a relator shall receive "at least 15 but not more than 25 percent . . . depending upon the extent to which the [relator] substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). Mr. Conyers supported the government's investigation through multiple meetings and phone calls, and the government has not produced documents establishing that it was aware of the fraud before Mr. Conyers' report. Additionally, the government has not argued for an alternative percentage, other than 0%. For these reasons, the Court concludes that Mr. Conyers is entitled to 25% of one third of the total settlement amount—$1,139,801.75.

Therefore, IT IS ORDERED that the United States of America pay to the relator, the Estate of Bud Conyers, the sum of $1,139,801.75, plus reasonable attorney's fees, within 60 days of this memorandum—failing that, the Court will enter a Final Judgment in that same amount along with interest and attorney's fees.

It is so ORDERED.

SIGNED on February 9, 2023, at Houston, Texas.

                                              Kenneth M. Hoyt
                                              United States District Judge